TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-02-00099-CV






Johnny Cantu, Feliberto De La Garza, John Epperson, Roger Hutchison,

Roel R. Morin, Alan Rice, Luciano Sanchez, Rodolfo R. Sanchez,

David Torres, and W. A. Westerkom, Appellants


v.


Gray & Becker, P.C., Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT

NO. GN103879, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING





 Appellants are ten of the original thirty-eight individual defendants in the proceedings
below who opted out of a court-approved settlement agreement regarding attorney's fees. (1) 
Following the district court's rendition of a final judgment, appellants contend that the district court
erred by denying appellants' (1) special appearance; (2) motion to transfer venue; (3) motion to stay
proceedings while they pursued an interlocutory appeal; (4) motion for a jury trial; and (5) the right
during trial on the merits to rebut Gray & Becker's case in chief, to present a defense, and to present
proof of illegality or lack of contract formation. We will affirm the district court's judgment.


Background


 In 1997, members of three unions at the Corpus Christi Army Depot wished to pursue
grievances against the United States Army regarding their asbestos exposure claims. The three
unions were the exclusive representatives of their members and were authorized under collective
bargaining agreements with the Army to pursue grievances on behalf of their members. The unions
contracted with Gray & Becker to represent their members' interests in collective bargaining
grievance proceedings against the Army. The unions' representatives entered into attorney's fee
agreements with Gray & Becker and agreed to pay Gray & Becker a contingent fee in the amount
of 33-1/3% of any recovery. Gray & Becker represented the unions and their members throughout
the grievance process and a labor arbitration proceeding. In 2000, the arbitration resulted in the
Army paying $82 million to the unions' members. The arbitrator also ordered the Army to pay Gray
& Becker attorney's fees in accordance with the unions' contingent attorney's fee contracts. The
Army appealed the arbitration order to the Federal Labor Relations Authority. Gray & Becker
represented the unions' members during the appeal. The Federal Labor Relations Authority
modified the arbitration order only in regard to the attorney's fees and directed the Army to request
its agency head to permit deductions from each of the employees' awards to pay attorney's fees in
accordance with the contingent fee contracts. The Army's agency head at the Department of Defense
denied the Army's request, and Gray & Becker was left to its own devices to collect its attorney's
fees.

 Gray & Becker then commenced a lawsuit and alleged that the employees who
received portions of the arbitration award were obligated to pay contractual attorney's fees to Gray
& Becker in the amount of 33-1/3% of each employee's gross recovery under the award;
alternatively, employees who had executed an Agreement for Compromise & Payment of
Contractual Attorney's Fees (the "27-1/2%" Agreement) were obligated to pay contractual attorney's
fees of 27-1/2% of the employee's gross recovery under the award. The law firm of Harris &
Greenwell represented a number of employees who filed counterclaims against Gray & Becker
asserting that as eligible employees under the arbitration award they were not obligated to pay
attorney's fees to Gray & Becker due to Gray & Becker's improper, unlawful, or tortious acts in
negotiating the attorney's fee contracts. In November 2001, Harris & Greenwell, on behalf of the
employee defendants, and Gray & Becker filed with the district court an "Agreement for Class
Action Resolution and Settlement (subject to Court approval)."

 The agreement stated that the employees' prospects of prevailing on their claims were
uncertain as the court had ruled adversely on similar employees' claims and defenses in another case,
and that the employees would be subject to liability and judgment for additional attorney's fees
incurred by Gray & Becker in the prosecution of the enforcement and collection of their claims. The
parties agreed that it was in all of their best interest to have one court address and resolve the
pending claims instead of having multiple lawsuits in various forums and venues. Gray & Becker,
in compromise and settlement of its claims and the employees' counterclaims, agreed to accept 25%
of each employee's gross recovery under the award as full and final settlement of the employees'
contractual attorney's fees obligation to Gray & Becker. Gray & Becker agreed to provide, at its
expense, notice (prepared by Harris & Greenwell) to all class members of the class certification, the
settlement, and the fairness hearing. Further, Gray & Becker agreed to provide the class members
with final notice of the court's approval of the class settlement. The district court defined and
certified two classes of individuals, named class representatives, appointed class counsel for both
classes, approved the notice to be sent to the class members, and ordered that the notice be mailed
to each member of the two classes. Additionally, the district court tentatively approved the terms
of the proposed settlement agreement and set the date for a fairness hearing.

 All class members were sent a detailed notice by direct mail based on the Army's
address list for current and former employees. Further, a detailed notice was published in a Corpus
Christi daily newspaper, and Gray & Becker held two open meetings at the Corpus Christi Army
Depot. The district court held the fairness hearing and rendered a final judgment. The judgment
contained three lists of individuals: those individuals covered by the judgment; those individuals
excluded from Class I as a result of their request to opt out in accordance with the notice of class
action; and those individuals who were excluded from Class II as a result of their request to opt out,
after receiving the notice of class action. (2) 


Underlying suit against individuals who opted out

 Gray & Becker commenced the underlying proceeding against thirty-eight individuals
who responded to the court-ordered notice and opted out of the settlement agreement. Gray &
Becker sought temporary restraining orders, temporary injunctions and, if necessary, permanent
injunctions enjoining the appellants from failing or refusing to pay the 33-1/3% of their award into
the registry of the court; disposing of, spending, or diverting 33-1/3% of their award or accepting or
otherwise receiving 33-1/3% of their award without paying Gray & Becker the 33-1/3% owed to
Gray & Becker as contractual attorney's fees. Gray & Becker also sought a declaratory judgment
declaring that the fee agreements were valid and enforceable contracts and that the appellants were
obligated to pay Gray & Becker 33-1/3% of their award as provided in the fee agreements. All
appellants were served with process.

 The district court issued a temporary restraining order and then rendered a temporary
injunction. The appellants filed an unsworn motion which included a special appearance, a plea to
the jurisdiction, a motion to transfer venue, and an original answer subject to the plea to the
jurisdiction and motion to transfer venue. Substantively, however, the motion addressed only the
venue issue and provided a general denial. Although the motion referred to supporting affidavits by
Joe Gonzales and Lazaro Quintanilla, neither affidavit was attached to the motion or appears in the
clerk's record. On February 5, 2002, notice of trial was sent and trial on the merits was set for
February 19.


At the hearing

 On February 19, the district court called the case for trial. The same morning,
appellants filed an amended plea to the jurisdiction and motion to transfer venue. In the portion of
the motion addressing the plea to the jurisdiction, the appellants, without any supporting authority,
urged that the district court was without subject matter jurisdiction and that Gray & Becker should
have presented its claims against appellants to the National Labor Relations Board. Further,
appellants, again without supporting authority, urged that Gray & Becker's claims were governed
by the Federal Fair Debt Collection Act and should have been brought in federal court. In the venue
portion of the motion, appellants urged that venue was not proper in Travis County because none of
the appellants resided in Travis County and none of them signed any contracts in the county. 
Appellants urged that venue was proper in Nueces County.

 At the hearing, the district court heard the plea to the jurisdiction and questioned
appellants' counsel regarding the whereabouts of the affidavits which counsel contended supported
the plea. The court noted that there were no affidavits attached to the motion nor were there any
affidavits in the clerk's record. The court recessed the hearing to allow appellants' counsel an
opportunity to locate the affidavits. When counsel was unable to locate the affidavits in the clerk's
files, counsel requested that the district court take judicial notice of the affidavits. The district court
declined to do so. Counsel attempted to make an offer of proof. Without the affidavits, however,
he was unable to do so. The district court then denied the special appearance. Appellants' counsel
then stated that he wanted to appeal the court's ruling on the special appearance and asked the
district court to grant his motion for continuance and stay any further proceedings pending the
appeal. The district court denied the request for a continuance, stating that there was no written
motion before him for consideration. The court also denied the motion to transfer venue. The court
then recessed the hearing until the next day for the trial on the merits. After the hearing, appellants
filed a jury demand.


Trial on the merits

 The next day the district court called the case for a bench trial. The district court
opened the hearing by requesting counsel to tender to the court orders for him to sign regarding the
court's denials of the special appearance and the motion to transfer venue from the previous day's
hearing. Appellants' counsel insisted that the court sign the orders before the court proceeded with
the trial on the merits, contending that it was imperative that the court sign the orders and stay the
proceedings so that appellants could take an interlocutory appeal. The court asked appellant's
attorney for any statutory authority or rule of procedure requiring that the court sign the order before
proceeding with a trial on the merits. Unable to produce a rule or statute, appellant's counsel
continued to insist that the court sign an order and stay proceedings. The district court cited
appellant's attorney for contempt, stating that she had interfered with and obstructed the court
process. When appellants' attorney continued to insist that the district court sign an order, the
district court placed appellants' attorney under arrest. Thereafter, the district court signed the order,
recused himself from the proceedings, and recessed the case until the following morning.

 The clerk's record reflects that the next day, with a different district judge presiding,
the district court rendered a final judgment in favor of Gray & Becker. Appellants, however,
declined to request a record of these proceedings from the court reporter. 


Final judgment

 The final judgment provided a detailed analysis of the amount of money each
appellant would receive from the Army, along with a calculation of the 33-1/3% each would owe
Gray & Becker as attorney's fees. The judgment denied all claims, if any, raised by appellants
against Gray & Becker. In addition, the judgment provided that Gray & Becker was entitled to
recover reasonable and necessary attorney's fees in the amount of $3500 from each appellant to
prosecute the case through trial. Additionally, the judgment ordered that Gray & Becker recover
attorney's fees of $5000 from each appellant in the event appellants filed a motion for new trial or
an appeal. Finally, the judgment ruled that Gray & Becker was entitled to postjudgment interest, and
again these sums were specifically referenced as to each appellant.


Discussion


Special Appearance

 Appellants contend that the district court erred in failing to grant their special
appearance. Appellants' only contention on appeal is that based on statements in the affidavit of Joe
Gonzales, the district court erred in denying the plea to the jurisdiction. Appellants argue that
Gonzales's affidavit accompanied the plea to the jurisdiction and was before the district court for
its consideration. Appellants further contend that the trial court erred in denying their requests to
stay the trial on the merits so that they could appeal the district court's denial of their special
appearance. Gray & Becker responds that no affidavits were attached to the special appearance
motion or located elsewhere in the record before the trial court. Further, Gray & Becker responds
that the district court did not err in denying appellants' special appearance and refusing to stay the
trial proceedings because the substance of the unsworn motion failed to present any special
appearance issues. Gray & Becker contends that the motion raised only venue issues for the district
court's consideration.

 The purpose of a special appearance is for a defendant to object to the court's
jurisdiction over the person or property of the defendant on the ground that such party or property
is not amenable to process issued by the courts in this state. See Tex. R. Civ. P. 120a. A special
appearance is not for the purpose of raising lack of jurisdiction over the subject matter of the case. 
Estate of Griffin v. Sumner, 604 S.W.2d 221, 226 (Tex. App.--San Antonio 1980, writ ref'd n.r.e.).
The burden of proof and persuasion is on the nonresident defendant contesting the court's
jurisdiction by special appearance. Id.

 Texas courts are courts of general jurisdiction and have personal jurisdiction over
Texas residents and all other persons who are amenable to process issued by the courts of this state.
Appellants' special appearance motion did not allege, aver, or establish through any prima facie
evidence that the appellants were not amenable to process issued by the courts of this State. In their
brief, appellants concede that they are indeed Texas residents. Indeed, appellants' brief provides,
"since defendants/intervenors (3) are Texas residents, the standard for general jurisdiction defects
would not be met." In addition, Rule 120a provides that a special appearance must be made by a
sworn motion. Neither appellants' original motion nor their amended motion was sworn and neither
motion included any sworn evidence supporting the motion. We conclude that the district court did
not err in denying appellants' special appearance.

 We next consider the district court's refusal to stay proceedings so that appellants
could pursue an interlocutory appeal of the denial of their special appearance. A person may appeal
from an interlocutory order of a district court that "grants or denies the special appearance of a
defendant under Rule 120a" except in particular situations that are not before us in these
proceedings. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (West Supp. 2003). Here,
although the district court received a motion which contained in its title the words "special
appearance," the court was not presented with a motion or any evidence that substantively invoked
Rule 120a or involved in any way special appearance issues. We conclude that the district court's
failure to stay proceedings to allow the appellants to pursue an interlocutory appeal did not affect the
substantial rights of the appellants. See Tex. R. App. P. 44.2(b). We overrule appellants' first and
second issues.


Venue

 In their third issue, appellants contend, without citing any authority, that the district
court erred in denying their motion to transfer venue. Again, appellants urge that based on
statements in Joe Gonzales's affidavit, the attorney's fee contracts were signed by him in Nueces
County and faxed to Mr. Bishop's fax number in Austin and that nothing occurred in Travis County
that would sustain venue there. Gray & Becker responds that Joe Gonzales's affidavit was never
before the trial court nor was any other evidence disputing Gray & Becker's venue facts as alleged
in the petition. Additionally, Gray & Becker responds that appellants' motion did not refer the
district court to any statutory provision that mandated that the venue for this case be in Nueces
County.

 In paragraph forty of Gray & Becker's original petition, Gray & Becker asserted the
following: 



 Gray & Becker and the Unions entered into the fee agreements which are the
subject and basis of this suit in Austin, Travis County, Texas and as a result of
Gonzales and Quintanilla soliciting Gray & Becker in Austin to represent their
unions and to enter into the fee agreements. The fee agreements did not become
operative and effective unless and until Gray & Becker signed the fee
agreements; Gray & Becker signed the fee agreements in Austin, Travis County,
Texas. In addition, most of the work (at least 90%) which Gray & Becker has
performed in performance of the fee agreements and in performance with the
attorney/client relationships which are the subject and basis of this suit has been
and continues to be performed in Austin, Travis County, Texas.




Accompanying Gray & Becker's petition was the verified affidavit of Brian Bishop, the attorney in
charge for Gray & Becker in these proceedings. In his affidavit, Bishop stated that he had reviewed
the facts alleged in the petition and knew them to be true and correct.

 Venue selection presupposes that the parties to the lawsuit have choices and
preferences about where their case will be tried. See Tex. Civ. Prac. & Rem. Code Ann. §§ 15.001-.040 (West 2002); Wilson v. Texas Parks & Wildlife Dept., 886 S.W.2d 259, 260 (Tex. 1994) (citing
Maranatha Temple, Inc. v. Enterprise Prod. Co., 833 S.W.2d 736, 741 (Tex. App.--Houston [1st
Dist.] 1992, writ denied)). Venue may be proper in more than one county under general, mandatory,
or permissive venue rules. Wilson, 886 S.W.2d at 260. The plaintiff is given the first choice of
venue selection in the filing of the lawsuit. Id. If the plaintiff's choice is not properly challenged
through a motion to transfer venue, the propriety of venue is fixed in the county chosen by the
plaintiff. Tex. Civ. Prac. & Rem. Code Ann. § 15.063 (West 2002); Tex. R. Civ. P. 86. The
question of proper venue is raised only if a defendant objects to the plaintiff's venue choice and
properly challenges that choice. Tex. R. Civ. P. 86. If a plaintiff chooses a county of proper venue,
and the choice is supported by proof as required by Rule 87, no other county can be a proper venue
in that case. Wilson, 886 S.W.2d at 261; Tex. R. Civ. P. 87. This rule gives effect to the plaintiff's
right to select a venue. Wilson, 886 S.W.2d at 261.

 In applying these rules, two bases exist for challenging venue: either (1) the county
where the proceedings are pending is not a proper county as no permissive venue exists, or (2)
mandatory venue lies in another county. See Tex. R. Civ. P. 86(3)(a), (b). Appellants' motion to
transfer venue did not allege either ground. Appellants' motion stated simply that "none of the
defendants reside in Travis County, Texas [and none] have []ever signed a contract in Travis
County." Further, appellants' brief states only that "venue concerning the contract(s) would be
proper in Nueces County." Based on these contentions alone, appellants argue that the court was
required to transfer venue to Nueces County.

 All venue facts, when properly pleaded, shall be taken as true unless specifically
denied by the adverse party. See Geochem Tech Corp. v. Verseckes, 962 S.W.2d 541, 543 (Tex.
1998); Tex. R. Civ. P. 87. At no time during the proceedings have the appellants specifically denied
or otherwise controverted the venue facts alleged by Gray & Becker in its petition. Appellants'
motion, therefore, did not properly challenge nor did it specifically deny any of Gray & Becker's
venue allegations. Gray & Becker's pleadings, accompanied by Brian Bishop's verified affidavit,
constituted prima facie evidence of proper venue. The district court correctly took as true the venue
facts alleged by Gray & Becker and determined that venue was proper in Travis County because all
or a substantial part of the events giving rise to the claim occurred in Travis County. See Tex. Civ.
Prac. & Rem. Code Ann. § 15.002(a)(1) (West 2002). We overrule appellants' third issue.


Jury Demand

 Appellants contend that the district court erred in denying their request for a jury trial. 
A party must file a written request for a jury trial "a reasonable time before the date set for trial of
the cause on the non-jury docket, but not less than 30 days in advance." Tex. R. Civ. P. 216. 
Appellants filed their demand for a jury trial following the district court's denial of their special
appearance late in the afternoon on the day before trial. 

 Appellants waived their complaint by failing to object when the district court
commenced the non-jury trial. See Rodriguez v. Dept. of Mental Health, 942 S.W.2d 53, 56 (Tex.
App.--Corpus Christi 1997, no writ). In the event their contention is not waived, their request was
untimely. A jury request made on the day before trial is untimely. See Huddle v. Huddle, 696
S.W.2d 895, 895 (Tex. 1985). We conclude that the district court did not err in denying appellant's
last minute demand for a jury trial. We overrule appellants' fourth issue.


Denial of right to rebut case in chief and present evidence of affirmative defenses

 Appellants contend in their fifth and sixth issues that the district court abused its
discretion during the trial on the merits by denying appellants the right "to rebut evidence" and by
not allowing appellants "an opportunity to make any offers of proof." Further, appellants contend
that the district court "abused its discretion in failing to permit appellants to present evidence on the
issue of lack of contract formation or illegality." These complaints relate to issues that arose during
the trial on the merits. Appellants requested that the court reporter prepare a record from the
February 20 proceedings on the merits for this appeal, however, they failed to designate or request
that the court reporter prepare a record from the February 21 proceedings on the merits for this
appeal. Further, appellants failed to cite to any evidence in the record before us to support or
substantiate these claims.

 When an appellant fails to request from the court reporter a complete reporter's record
or fails to comply with the partial reporter's record provisions of Texas Rules of Appellate Procedure
34.6, the appellate court will presume that the unrequested records contain matters supporting the
district court's judgment. See Sandoval v. Commission for Lawyer Discipline, 25 S.W.3d 720, 722
Tex. App.--Houston [14th Dist.] 2000, pet. denied); see also Favaloro v. Comm'n for Lawyer
Discipline, 994 S.W.2d 815, 820-21 (Tex. App.--Dallas 1999, no pet.). Issues dependent on the
state of the evidence cannot be reviewed without a complete record, including a reporter's record.
Sandoval, 25 S.W.3d at 722. Without a complete record, issues dependent on the state of the
evidence at trial will be deemed to have been waived. Favaloro, 994 S.W.2d at 820-21.

 Without a reporter's record from the February 21 hearing, we are unable to discern
the bases for appellants' claims. Appellants failed to request a record showing these claims were
preserved for appellate review. Id. Consequently, appellants have waived these complaints. Id. We
overrule appellants' fifth and sixth issues.


Conclusion


 Having addressed all of appellants' contentions, we affirm the district court's
judgment.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: November 21, 2002

Do Not Publish

1.   This Court has addressed two appeals related to the same attorney's fees settlement
agreement. See De la Garza v. Gray & Becker, 03-02-135-CV, 2002 Tex. App. LEXIS 5460 (Tex.
App.--Austin July 26, 2002) (not designated for publication); Garcia v. Gray & Becker, 03-02-00372-CV, 2002 Tex. App. LEXIS 6883 (Tex. App.--Austin September 26, 2002) (not designated
for publication). 
2.   Further, the judgment ordered each class member to pay 25% of the gross amount of
recovery under the arbitration award, and declared that upon such payment, either through direct pay
or garnishment, the individual would fully satisfy any claim Gray & Becker might have against the
individual. The judgment further ordered each individual to pay 25% of the gross recovery within
ten days of receiving the class members' portion of the arbitration award. If not paid within ten days,
those non-paying individuals were ordered to pay Gray & Becker 33-1/3% of the employee's gross
portion of the award plus reasonable and necessary attorney's fees incurred by Gray & Becker in the
prosecution and collection of its fees.
3.   It is unclear why appellants refer to themselves as "defendant/intervenors" as there is
nothing in the record reflecting any intervening parties in these proceedings.